Trent et al. The Village of Westbury et al. Case number 25-2903. Thank you. Good morning, Your Honor. Good morning. Paul Kersen, K-E-R-S-O-N. Levitt, Kersen, and Sahadi for... Can you put down the microphone, sir? Thank you. Thank you. Great. Terrific. I represent Mr. James Trent as preliminary executor of the estate of Margaret Ottavino and A. Ottavino Property Corporation. Mr. Trent is here. He takes his duties as executive very seriously. What happened in this case, because of a series of errors, the property worth more than a million dollars at 11 Post Avenue, Westbury, New York... Can you explain to me why the judgment in the quiet title action is not the source of the injury you're alleging here? It's not the source of... Yeah. I need to know what the effect of the quiet title action is to this case, and I think one person could read it as being the source of the injury. Well, our position is that the United States Supreme Court's decision in Tyler v. Hennepin County supersedes anything that went before that. The Chief Justice was very clear in what he wanted all of us to do following his decision. He said the takings clause was designed to bar government from forcing some people alone to bear public burdens, which in all fairness and justice... I just want to make sure I understand your argument. Are you saying that that Supreme Court case eliminates everything that happens? Oh, yes. And that is what... Every single thing. That's what the New Jersey Supreme Court said, that's what the Nevada Supreme Court said, and that's what our own appellate division second department said. Okay. So let me say, if we disagree with you, let's just hypothesize that there is room for other conclusions to that. Is the quiet title action the source of your injury? Partly. Okay. Then if that is, why do you not have a Rooker-Feldman problem? Because of what happened in the Feldman case itself. Now, remember what happened there. Feldman was challenging the District of Columbia bar admissions regulations, and he was making a constitutional argument. And what the courts did in that case was to send it back and say, look, make your constitutional arguments in the original case. It did not bar his case at all. Feldman does not mean what my adversaries say it means. You have to read Feldman carefully to know what happened there and what it means. Feldman is on our side. That also, by the way, is exactly what happened in the county acquisitions against — in crews against county acquisitions in the village of Hempstead. The appellate division second department there considered all the arguments that you have here and sent it back to the Nassau County Supreme Court to determine how much money was owed to the homeowner. That's what governs this case. What happened below was unforgivable. And when you read Justice — the Chief Justice's decision, his feeling is this was the law all along. Everybody just didn't know it. That certainly was the case. We can't have a situation where $1,897.51 in tax arrears and $1,228.90 in tax arrears entitles a speculator to a million-dollar property. That's not our country. We don't do things like that. Anywhere in the Tyler decision do you think that we should read it to supersede or trump our doctrine in Rooker-Feldman? Rooker-Feldman is on our side. But even if you read Rooker-Feldman definitely, of course it does. It's later in time. This is the Supreme Court of the United States talking. We have to follow it. I really never thought in all these years that when there's a United States Supreme Court case directly on the point that we would not follow it. I mean, how could that even be? That's just against the fundamental principles of how the system is organized. What do we do about the New York case law that says that changes in decisional law do not create an exception to residue decada? That doesn't trump the opinion of the Chief Justice, joined by all the other justices. So there I might quiz you. Where in Tyler or in any other Supreme Court decision does it say that our decision will override any common law, state law, res judicata principles? Okay, where? In Virginia versus Because if you told me that, then that would revolutionize my view. Just to be very clear of what res judicata is all about. It's a principle that cuts across other principles. Okay. I don't think we have to get to that point because of the case of Harper v. Virginia Department of Taxation. That was a 1993 United States Supreme Court case which clearly said, quote, when this Court applies a rule of Federal law to the parties before it, the rule is the controlling interpretation of Federal law must be given full retroactive effect. In all cases, still open on direct review. And as to all events, regardless whether such events predate or postdate our announcement of the rule. But your case wasn't open on direct review. Your case had been resolved. No. Okay. Respectfully, we filed the case in the United States District Court for the Eastern District of New York on February 17th, 2023. Tyler was not decided until May 25th, 2023. But the underlying decision that triggered res judicata had been, that triggered claim preclusion, had been adjudicated and was closed and was over, wasn't it? Those were the State Court proceedings, which that is overtaken. Do you think that Tyler could reopen State Court cases that had gone to a final judgment? Yes, that's exactly. Let's say hypothetically that the State Court decision that you are complaining about happened in, you know, 15 years ago. Could it reopen a case that had been closed in 1990? Yes. That is the clear holding of the United States Supreme Court in Griffith against Kentucky in 1987. And then, quote, various members of the court have asserted that at a minimum, all defendants whose cases are still pending on direct appeal. But here's what, my hypothetical involved a case that wasn't pending on direct appeal. The injury that you claim, that you are complaining about before us, resulted from a decision that had been closed long ago, didn't it? The New York State legislature adopted Tyler in a statute that they passed in 2024 called the Homeowners' Bill of Rights, Real Property Tax Law, Section 1142, Subdivision 4, which made Tyler the State of New York law. This is what Real Property Tax Law 1142 says, talking about the rights of homeowners. In the event that their primary residence is foreclosed upon to receive a share of any surplus resulting from the sale of the property in the manner provided by law, the State legislature of New York made Tyler retroactive, as did the Supreme Court of New Jersey, as did the Supreme Court of Nevada, as did the Appellate Division Second Department. Respectfully, those, all of that isn't binding upon you, but it certainly is persuasive that the majority of legislative and judicial opinion is that Tyler must be followed, especially as the cases that were open at the time Tyler was decided. May I have one more question? I'm assuming I will now know the answer, given your last couple bit of questions, but is it, it's your position that there's no statute of limitation for declaratory judgment? No, that's the Lukenbeck steamship case. There isn't any. That case is very clear. Okay, thank you. Thank you. Thank you very much. Well, I wasn't done yet, but if you want me to be done, of course. You're done. You're done. I'm done. Okay. Thank you for listening, Your Honors. Thank you.  Good morning, Your Honors. May it please the Court. Andrew Roth, son, Ward Graf Casagnano for the Incorporated Village of Westbury and Thaddeus Black. Your Honor, I just want to start with the basic Supreme Court principle that no legal principle, no new legal principles apply to closed cases. As Your Honors have all indicated, this case is final twice, basically. Action number one, there was a State court judgment that was not appealed. Action number two, case was dismissed. In answer to my question, Mr. Churchill referenced Harper. Your Honor, there has to be a case that is open going through the appellate process in order for Tyler or any other cases that he cites to apply. As a matter of fact, all the cases he cited, county acquisitions, Nevin, Continental Resources, 257 near 61 20th Avenue, they were all going through the appellate process. Tyler will apply to those cases. They were being sent back to be ruled upon in Tyler. In our case, it's been over for years. Just filing a new federal court claim based on the injury sustained as a result of the judgment, loss of title. That's what happened in the judgment. He lost title. He lost title through the tax lien foreclosure proceeding. And quiet title was declared in favor of B.R. Madison, who is the co-appellate here. At that point, it was over. At that point, this case was over. The issues in that case. Well, at that point, as it went up and the appeal was denied by the Newark Court of Appeals, right? No. In the first action, there were two state court actions. The first action went to judgment. It was not appealed. Article 15 action. The Article 15 was the second action. That went up. And some of these claims that you've heard today on behalf of the appellant were raised before the Court of Appeals. Court of Appeals in New York rejected them and decided we're not going to hear this case. Well, it didn't reject them. It just decided. It denied. It denied. I mean, basically, Your Honors, if we decide what the appellants are suggesting, and if we agree with that, every tax lien foreclosure case would be open to attack, reversal, and that's just not the law. There has to be something open and going through the court system for Tyler to apply. And that's what the court seemed to be doing, number one. Number two, Tyler did not overturn, overrule anything before this court, anything that was done to get here. Rather, it did not even question the taxing authority, my client, power to foreclose on delinquent tax sales. It actually underscored that the taxing authority had the power to sell the delinquent tax property, to recover the unpaid property taxes, notwithstanding the absence of any surplus. The village here did not get a surplus, did not receive a surplus. They received the ex— That's certainly the next generation case for Tyler. Absolutely. I have a question about Rupert Feldman. So we have some cases saying that when the State court judgment merely ratifies or acquiesces some of the unlawful conduct, then Rupert Feldman doesn't bar review. How do you think we should think about this case in light of that precedent? So in the judgment, and in action number one, all actions undertaken by the village, which I'll suggest went above and beyond what the statute required, they gave additional notices. You're short on time, so please stick to my question. I'm sorry. Go ahead. So what do we do about the cases that say that State court judgments that merely ratify or acquiesce, then Rupert Feldman doesn't bar a review? So that's what I was getting to. I don't believe that what happened in the State court acquiesced or ratified anything. They actually found that it was proper. As a matter of fact, my client wasn't even a party to that first action, but they were in privy. Well, but the NPI filed the quiet title action, and they had already obtained the deed of the property. So why isn't it just a ratification? Because there was a challenge to everything that the village had done in that case, the notices. There's an argument in this Court that what we did was improper, was unconstitutional. We didn't provide proper notice. If those notices were improper, the deed would have been struck. They ruled that the notices were, in fact, proper. So it wasn't just an acquiescence or ratification. It was a finding that what the village did was proper, followed the rules, and due process was satisfied. The procedure was followed. The deed was issued. And a quieted title in B.R. Madison, now NPI, owns that property through a subsequent transfer. If there are no other questions, we'll rest on our brief. Thank you very much, Your Honor. We'll hear from counsel for B.R. Madison. Good morning, Your Honors. Good morning. May it please the Court, Donna Napolitano from the firm of Berkman Hennick Peterson and Petty, on behalf of B.R. Madison, LLC, and Nassau Property Investors, P.C. I'm not going to repeat my colleagues' comments with regard to finality. We also believe that the two state cases were final. They're not open. They're not open cases. They're not on appeal. So your colleague on the other side, and if you look, you'll find them, some New York case law claims preclusion that suggests that major changes in the law might sometimes be an exception to what we would think of as res judicata. What do you make of those cases, and does it apply here? I do not think it applies here. I think Judge Kogan was very clear in his decision that this is absolutely a claim preclusion case. His decision was very well written and went through those cases. Well, how do we strike the balance between that view and the idea that sometimes Supreme Court rulings have some amount of retroactive effect? Well, as Mr. Roth said, Tyler's definitely going to have a retroactive effect on cases that have not been fully gone through the trial, not open, not on direct appeal. But they've raised some claims that they couldn't have raised because Tyler didn't recognize them as a right before then. How do we deal with that? I think, Tyler, though, the Supreme Court was very clear in that this issue of land surplus went back to something like the Magna Carta in 1215 and said that this is not a new concept. Municipalities or governments are not allowed to take someone's land, right? You can take it if you have taxes that have to be repaid, but you can't take the surplus. And it goes back many hundreds of hundreds of years, and Tyler expressed that. And I think – Did they not make a takings claim? Excuse me? Was there not a takings claim and takings argument here? Yes, there was. That didn't have the benefit of Tyler per se, but it was an argument. Yes, there was in the state court. And I think Judge Kogan explained in his decision that – let me backtrack a little. I believe that Mr. Trent made the argument that how could I possibly know what the Tyler court was going to say? And Judge Kogan said, what do you mean? This law has been around for centuries, so you could have made that argument that, yes. Actually, Tyler made the argument. Yes, and Judge Kogan. In that very case. Yes. And also, I think it's important to note that the Tyler decision really struck the Minnesota statute because the Minnesota statute was like, yeah, we're going to take your property for taxes due, and we're going to keep the surplus. And that's what Tyler stands for. It's not that you cannot do these tax foreclosures. Government can't take the surplus. And I do want to just mention one more thing, Your Honors. In the appellee's reply, five-page reply, they talk a great deal about the case Cruz versus the county acquisitions. And Mr. Kirsten mentioned it. That case went up to the second department, and the second department specifically stated that they couldn't make a decision because the attorney general was not there as party to this, and they needed to send that back to the trial level, the Supreme Court. They remanded it back for further action. So that case is absolutely still open, and it's still on appeal. So it doesn't match this case. The facts of that case are not relevant to the facts of this case. And if there's no other questions, I will stand on my papers. Thank you very much. Mr. Kirsten. I would urge Your Honors to follow the weight of judicial authority on this point, the appellate division second department decision in the county acquisitions, which I have that case myself. It was remanded, and we started the hearing in the Nassau County Supreme Court yesterday. There's going to be a briefing on how much the homeowner is owed. I would suggest that that's what you should do, send it back for a hearing on how much the homeowner is owed. That's what the— Well, how do we send it? If restituta cata applies, then we don't send it back. You would agree with that. If we disagree with you and conclude that restituta cata or claim preclusion applies, we don't send it back. It's done. I'm urging you to agree with me because of the weight of judicial authority. Yes. The Supreme Court of Nebraska, the Supreme Court of New Jersey, this is what they said. The historical and traditional legal principles relating to surplus equity, which the U.S. Supreme Court reviewed in Tyler, as well as prior precedents, are relevant here as well. As in Minnesota, therefore, property owners in New Jersey have a recognized property right to surplus equity.  No time limit. The New York State Legislature, in new real property tax law 1142, subdivision 4, enacted Tyler's holding as a statute. The Nebraska Supreme Court, the New Jersey Supreme Court, the Appellate Division, Second Department, the New York State Legislature, they all take the position that Tyler is retroactive, certainly has depending cases. I would urge you to agree with me. That, Mr. Gershwin, is the key because Harper also certainly has dependent cases, not closed cases. And don't get me wrong. Speaking only for myself, I'm sympathetic. But we've got these higher order principles, including and especially claim preclusion, that are about finality. So you can't get a third, fourth, fifth bite of the apple. And you have not, I think, explained to me why res judicata doesn't apply to a case that was – that is not pending, that was closed long ago. Because – In answer to both of my colleagues' questions. The weight of authority is that it is retroactive because of the fundamental issue that $1,897 and $1,228 cannot buy a million-dollar property. Somebody got a windfall who was not entitled to it. Now, you know, I could go further as to what not entitled means. But I think you know what I mean when I say that. This is a very suspicious circumstance. And the Chief Justice didn't like it. The New Jersey Supreme Court didn't like it. The Nebraska Supreme Court didn't like it. The New York State Legislature didn't like it. The Appellate Division Second Department didn't like it. I don't think you should like it either. Well, we'll reserve the decision. Thank you very much. Okay.